**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT, 41475 Gardenbrook Rd. Novi, MI 48375<br><br>BROTHERHOOD OF RAILROAD SIGNALMEN 917 Shenandoah Shores Road Front Royal, VA 22630<br><br>*Plaintiffs,*<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK 60 Massachusetts Avenue, N.E. Washington, D.C. 20002<br><br>*Defendant.* | Case No.:    1:26-cv-1822 |

**COMPLAINT**

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") and the Brotherhood of Railroad Signalmen ("BRS") (jointly referred to herein as "Unions") bring this complaint against the National Railroad Passenger Corporation, ("Amtrak" or "Carrier") for a declaratory order that Amtrak has violated Sections 2 Seventh and 6 of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 152 Seventh and 156 by unilaterally changing the parties' collective bargaining agreements with respect to accrual of Paid Time Off ("PTO").

The Unions filed "claims" or grievances on behalf of individual members of the Unions that served as a test case for an arbitration board to analyze the PTO provisions of the

1

agreements between the Unions and Amtrak and determine the appropriate calculation for PTO accrual under the CBA. The arbitration board sustained the claims by an Award dated March 9, 2026 which held that the "Claims are sustained", and further that "this Board finds that the Carrier's practice of only awarding PTO accrual to those employees who were in active employment on the 15th day of any month, without consideration of whether they were in active employment on any other day of the month, is contrary to the plain and unambiguous language of the PTO Agreement." Amtrak has refused to adhere to the Board's interpretation of PTO accrual under the agreements and is instead applying the agreements in a manner rejected by the arbitration board. Because Amtrak's actions constitute a unilateral change to the agreements, the Unions seek a declaratory order that Amtrak is in violation of RLA Sections 2 Seventh and 6.

**Parties**

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan.  The BMWED is the designated representative for collective bargaining under Section 1 Sixth of the Railway Labor Act ("RLA"), 45 U.S.C. §151 Sixth, of employees of Amtrak working in the class or craft of maintenance of way employee.  On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters.  Prior to that date, the BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes.

2. BRS is an unincorporated labor organization that maintains its headquarters in Front Royal, Virginia. BRS is the duly designated representative, for collective bargaining under the RLA, 45 U.S.C. §151 Sixth  of Amtrak employees working in the Signalman class or craft.

2

3. Amtrak is a rail carrier as that term is defined in Section 1, First of the RLA, 45 U.S.C. §151, First. Amtrak conducts rail operations throughout the contiguous United States and portions of Canada. Amtrak is a partially government-funded corporation that maintains its headquarters in Washington, DC.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce. The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because Amtrak owns and operates lines of railroad within this District and is headquartered in this district.

**Statement of Claim**

6. Among other things, Amtrak's Maintenance of Way employees represented by BMWED are responsible for constructing, repairing, rehabilitating, upgrading, renewing, inspecting and maintaining the Carrier's track and right of way, as well as bridges, buildings, and other structures.

7. Among other things, Amtrak's signalmen represented by BRS are responsible for constructing, repairing, rehabilitating, upgrading, renewing, inspecting and maintaining the Carrier's Signal and Grade Crossing systems.

8. BMWED and BRS, are parties to agreements with Amtrak that establish and govern the rates of pay, rules, and working conditions of Amtrak employees working in the Maintenance of Way craft/class and Signalman craft/class.

9. ARTICLE III of agreements entered by BRS and Amtrak and BMWED and Amtrak in March of 2023 replaced existing vacation agreements with a new a Paid Time Off agreement that is described in Attachments A to those agreements.  Those agreements provide in part:

> **Article III - PAID TIME NOT WORKED**
> \*\*\*
> **Section 4 – Paid Time Off**
> The Vacation Agreement is replaced by the Paid Time Off (PTO) Agreement (see Attachment A).
> Personal Leave Day provisions are removed and superseded by the new PTO Agreement….

10. Attachment A accompanying the Agreements between the parties states in relevant part:

> **ATTACHMENT A**
> **Paid Time Off Agreement**
>
> **Section 1 – EMPLOYEES HIRED AFTER JANUARY 1, 2022**
>
> Employees newly covered by [Amtrak's agreements with the BMWED and BRS} will, as described below, accrue Paid Time Off (PTO) up to accrual limits during periods of active employment beginning July 1, 2023. That PTO may be used, as described below, during the same calendar year or carried over consistent with accrual limits.
>
> A. PTO ACCRUALS
> PTO accrues during periods of active employment, except during a leave of absence (see (1) below) and is generally awarded on the fifteenth (15th) day of each month.
> \*\*\*
> Accrual During a Leave of Absence. PTO will not accrue while an employee is on a leave of absence, including while on leave pursuant to the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA") and military leave.
>
>     \*       \*       \*       \*
> **Section 2 -EMPLOYEES HIRED BEFORE JANUARY 1, 2022**

4

As described below, employees will accrue PTO up to accrual limits during periods of active employment, beginning January 1, 2023. That PTO may be used, as described below, during the next calendar year.

A. PTO ACCRUALS

PTO accrues during periods of active employment, except during a leave of absence (see paragraph below)[1] and is generally awarded on the fifteenth (15th) day of each month.

11. On November 7, 2023, the Carrier's Labor Relations Department presented information regarding the new agreements to the Organizations' bargaining unit members via a video and a Frequently Asked Questions ("FAQ") handout. The FAQ handout states in relevant part:

**PAID TIME OFF (PTO)**
\*\*\*
Q24: How many days does an employee have to work and in what time frame to accrue each month?
A24: There is not a minimum number of days required. The employee must be in active status on the 15th of the month in order to receive the PTO accrual for that month….
\*\*\*
**LEAVE OF ABSENCE**
Q70: If an employee is out on medical leave, do they accrue PTO?
A70: No. Unless they are in active service on the 15th of the month…

12. BMWED and BRS immediately objected to the FAQ handout and video. The Unions asserted that they had not agreed that an employee must be actively employed on the 15th of a month in order to accrue PTO, that the Agreements contained no such requirement, and they asserted that it was sufficient that an employee be in active service any time during a month.

13. Beginning in January of 2024, BMWED and BRS members who worked during periods of certain months, but were not in active service on the 15th day of the months were denied PTO accrual by Amtrak.

5

14. BMWED and BRS had a series of meetings with Amtrak in an attempt to resolve their differences. BMWED and BRS asserted that Amtrak's position that an employee must be in active service on the 15th day of a month to accrue PTO was an unlawful unilateral change or abrogation of the parties' agreements. Amtrak maintained that any dispute between it and the unions should be resolved in arbitration.

15. The parties ultimately agreed to continue to negotiate to attempt to resolve the dispute, as well as other disputes, but they agreed that if they could not reach agreement, the parties would arbitrate the issue, with the Unions providing sample cases in the form of specific claims.

16. On March 5, 2024, counsel for the Unions wrote to Amtrak's Vice President for Labor Relations, stating:

> I am writing to confirm the understanding that we reached yesterday about obtaining arbitral resolution of the differences between BMWED and BRS and Amtrak regarding the accrual of PTO. Without specifically setting forth a formal statement of the issue, the dispute concerns the meaning of the first sentence of Part A PTO accruals in Sections 1 and 2 of Attachment A of the recent agreement. It was agreed that the Unions would prepare and present a claim that will definitively describe the issue. That the claim would be handled through the claims/grievance process and that if it cannot be resolved through that process, it will be presented to and decided by a parties' pay arbitration board in expedited arbitration. Please confirm that this accurately reflects our understanding yesterday.

17. On March 5, 2024, Amtrak's Vice President for Labor Relations responded as follows:

> Yes, I am in agreement that you have accurately reflected our understanding from our meeting yesterday.

18. The parties continued to attempt a negotiated resolution, but were unsuccessful.

19. In the meantime, BRS and BMWED prepared and presented claims on behalf of two employees who were denied PTO accrual because they were not in active service on the 15th of a month, even though they had been in active service on other days of the month (Claimant Dan Leary for BRS and Claimant A.D. Jimenez for BMWED). Those claims constituted individual claims that presented the question in dispute as described in the email exchange and understanding between the Unions' counsel and Amtrak's Vice President of Labor Relations on March 5, 2024.

20. During handling on the property, there was no dispute between the parties that the two individual claimants were actively employed by Amtrak during the months covered by the claims but were not actively employed on the 15th days of those months, and that they were denied PTO accrual for those months.

21. After handling of the claims under the CBA was completed, the claims were referred to a "parties pay", expedited Special Board of Adjustment for decision under Section 3, Second of the RLA, 45 U.S.C. § 153, Second. The Arbitrator and Neutral member of the Board was Arbitrator Kathryn A. VanDagens.

22. On March 9, 2026, the Board issued its Award in which it sustained the Unions' claims.  The Award stated: the "Claims are sustained."

23. The Award further stated that "this Board finds that the Carrier's practice of only awarding PTO accrual to those employees who were in active employment on the 15th day of any month, without consideration of whether they were in active employment on any other day of the month, is contrary to the plain and unambiguous language of the PTO Agreement."

24. On March 20, 2026, the Unions wrote to the Carrier to "confirm that Amtrak intends

to comply with the holding of the Award going forward, specifically, that a single day of 'active employment' in a month is sufficient to accrue PTO, and please advise us as to when Amtrak will update the PTO Q&A's to the membership accordingly."

25. On March 30, 2026, Amtrak Labor Relations responded to the Unions and said that Claimants Leary and Jimenez had been credited with accrued PTO for the months identified in their individual claims, but Amtrak declined to confirm that the Carrier would comply with the interpretation in the Award going forward. Instead, Amtrak Labor Relations simply wrote "Future assertions of incorrect PTO accrual due to Paid Parental Leave use can be submitted for handling in accordance with the respective collective bargaining agreement."

26. On April 6, 2026, the Unions again wrote to Amtrak seeking confirmation that the Carrier would comply with the Award going forward. BMWED wrote that Amtrak's response was insufficient and that "the question we sought an answer to is whether Amtrak will comply with the holding of the Award, its interpretation of the agreement that employees accrue PTO for any month in which they are actively employed, not just months in which they are actively employed on the 15th day of the month."

27. On April 28, 2026 Amtrak responded to the Unions' April 6, 2026 letter stating that it had complied with the Award with respect to Claimants Leary and Jimenez but that the Award would not cause Amtrak to handle PTO accrual any differently than as it had prior to issuance of the Award and that any employees who object to not accruing PTO because they were not in active service on the 15th day of a month would have to file and process their own claims.

8

## CAUSE OF ACTION

28. The Unions repeat and reallege herein the allegations contained in paragraphs 1-27 above which are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

29. Section 2 Seventh of the RLA, 45 U.S.C. §152 Seventh provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

30.  Section 6 of the RLA, 45 U.S.C. §156, provides:

"Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board."

31. The PTO agreements by their terms, and as authoritatively interpreted and applied by the Award provide that PTO is accrued during any month in which an employees is in active service, and they do not require that an employee be in active service on the 15th day of the month. Amtrak's imposition of a requirement that an employee be in active service on the 15th day of a month in order to accrue PTO constitutes a unilateral change of the agreements in violation of the RLA Section 2 Seventh prohibition against changes in "rates of pay, rules, or

9

working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 6" of the RLA.

## REQUEST FOR RELIEF

BMWED and BRS respectfully request that the Court:

A.    DECLARE that Amtrak's unilateral imposition of a requirement that an employee be in active service on the 15th day of a month in order to accrue PTO constitutes a unilateral change of the agreements in violation of RLA Section 2 Seventh and Section 6;

B.    GRANT BMWED and BRS any other relief that the Court deems just and equitable.

Respectfully submitted,

*/s/ Aaron S. Edelman*
Richard S. Edelman
D.C. Bar No. 416348
Aaron S. Edelman
D.C. Bar No. 1048499
Attorneys for Plaintiff
Mooney, Green, Saindon, Murphy &
Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
Fax (202) 783-6088
Redelman@mooneygreen.com
Aedelman@mooneygreen.com

10